# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASCENTIVE, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>OPINION CORP. d/b/a<br>PISSEDCONSUMER.COM, MICHAEL<br>PODOLSKY, JOANNA SIMPSON, and<br>ALEX SYROV,<br><br>     Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.    Plaintiff Ascentive, LLC ("Ascentive"), is suffering irreparable harm as a result of the extortionate scheme of defendants Opinion Corp. d/b/a PissedConsumer.com, Michael Podolsky, Joanna Simpson and Alex Syrov (collectively, "Defendants" or "PissedConsumer"). Under this scheme, PissedConsumer encouraged consumer internet complaints against businesses, including Ascentive.  Pissed Consumer then offered to remove these complaints, which harm Ascentive's business and reputation, only if Ascentive agreed to pay substantial sums of money to PissedConsumer and not to disclose the payments or certain other information about PissedConsumer's "custom reputation management" services.

2.    PissedConsumer's practices constitute (1) racketeering under the civil Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), based on predicate acts of extortion and commercial bribery; (2) trademark infringement, unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1051 et seq.; (3) common law trademark infringement, unfair competition and false advertising, (4) unfair methods of

competition and unfair acts and practices under 73 P.S. 201-2; (5) intentional interference with contractual relations and prospective contractual relations; and (6) unjust enrichment.

3.      Ascentive further requests a declaration that the "non-disclosure agreement" PissedConsumer forced Ascentive to sign is void as against public policy.

## THE PARTIES

4.      Ascentive is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 201 Spring Garden Street, Philadelphia, Pennsylvania, 19123.

5.      Defendant Opinion Corp. d/b/a PissedConsumer.com ("Opinion Corp") is a New York corporation.  Upon information and belief, Opinion Corp.'s principal place of business is at 1204 Avenue U, Suite 1080 Brooklyn, NY 11229.

6.      Upon information and belief, defendant Michael Podolsky is the chief executive officer of Opinion Corp. and an individual residing at 815 Gravesend Neck Road, 6R, Brooklyn, New York, 11223.  Mr. Podolsky controls and operates the PissedConsumer website, had a series of communications with Ascentive's director of marketing Ian Singer and, as described below, committed multiple predicate acts in violation of the RICO statute.

7.      Upon information and belief, defendant Alex Syrov is the president of Opinion Corp. and an individual residing at 1412 Avenue M, PMB 2282, Brooklyn, NY 11230.  Mr. Syrov controls and operates the PissedConsumer website and, as described below, committed multiple predicate acts in violation of the RICO statute.

8.      Upon information and belief, defendant Joanna Clark Simpson is Opinion Corp.'s marketing director and an individual residing in the state of New York.  Ms. Simpson authored and published press releases on Opinion Corp.'s behalf.  Ms. Simpson controls and operates the

PissedConsumer website and, as described below, committed multiple predicate acts in violation of the RICO statute.

9.       Upon information and belief, Ms. Simpson also controls and operates the Twitter accounts http://twitter.com/consumer_press and http://twitter.com/pissedconsumer.

10.       Upon information and belief, defendants Opinion Corp., Joanna Simpson, Alex Syrov, and Michael Podolsky advertise, solicit clients, and conduct substantial amounts of business in the State of New York.

## JURISDICTION AND VENUE

11.       This complaint arises under the Lanham Act, 15 U.S.C. § 1125 and 15 U.S.C. § 1114, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c) and (d).

12.       This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to the federal claims brought in this complaint as to form part of the same case or controversy.

13.       Defendants are citizens of New York and subject to personal jurisdiction in New York.

14.       Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) because all defendants reside in the State of New York and in this district.

## FACTS

### A. Ascentive's Intellectual Property and Computer Software Products

15. Ascentive develops and sells computer software products that enhance and protect personal computers, including improving system performance, increasing speed, ensuring privacy, and eliminating the threat of spyware.[1]

16. Over the past decade, Ascentive has developed a reputation as a leader in the personal computer software industry. Ascentive has marketed more than a dozen computer software products, receiving accolades from media outlets including *The Wall Street Journal*, *Newsweek*, *Forbes*, Tech TV and NBC.

17. Ascentive owns a trademark registration for its ASCENTIVE trademark in the United States Patent and Trademark Office, Reg. No. 3,091,824 (issued May 16, 2006).

18. Ascentive also owns registrations in the United States Patent and Trademark Office for its FINALLYFAST.COM trademark (Reg. No. 3,533,775, issued Nov. 18, 2008), FINALLY FAST trademark (Reg. No. 3,727,610, issued Dec. 22, 2009), and FINALLYFAST trademark (Reg. No. 3,727,611, issued Dec. 22, 2009).

19. Ascentive's trademarks are inherently distinctive.

20. Ascentive has run advertisements for its products and services nationwide, and also has invested heavily in international marketing.

21. Ascentive operates a number of websites, including www.ascentive.com and www.finallyfast.com, where its computer software products are advertised, sold, and made available for download.

---

[1] Spyware is harmful software used to collect information and data from personal computers, which may be downloaded and installed without the computer user's consent.

22.    In addition to its extensive online advertising, Ascentive develops and airs television advertisements that encourage consumers to search for its software products online by brand name, and to subsequently buy and download these products.

23.    In 2009, Ascentive derived approximately 99 percent of its revenues from online sales from its websites.

24.    Ascentive is a Microsoft Certified Partner and its software has been recently tested by various third parties such as StopBadware.org.  These tests have established that Ascentive's software is safe for personal computers.

**B.    PissedConsumer Falsely Claims to Function as an Unbiased Consumer Advocacy Group Through Its Operation of PissedConsumer.com**

25.    PissedConsumer owns, operates and maintains the website located at www.pissedconsumer.com.

26.    PissedConsumer invites consumers to post public complaints on its website www.pissedconsumer.com from their personal computers and mobile phones.

27.    PissedConsumer publishes a "PissedConsumer" iPhone application and advertises heavily on Facebook.

28.    PissedConsumer has published numerous press releases claiming that it is an unbiased "premier consumer advocacy group."  Upon information and belief, these press releases were authored by Opinion Corp. and defendant Joanna Clark Simpson.  *See* Press Releases, attached as Exhibit 1.

29.    PissedConsumer advertises itself to the public as a consumer review website that allows consumers to "make better choices" between competing products and gives consumers an "empowering" and "unbiased" view of companies and products.

30.     PissedConsumer states: "Share your ***unbiased*** consumer review for the product or service with other customers.  Are you ready to say: I am pissed?"  *Id*.  (emphasis added).

31.     As explained more fully below, however, PissedConsumer's representation that it functions as an unbiased consumer advocacy group is false.

32.     PissedConsumer encourages and creates the most negative postings it can on the PissedConsumer website, displays those postings as prominently on the internet as possible, and relates those postings as closely as possible to the companies' brand names.  PissedConsumer has an incentive to engage in these practices because they induce the victims of the "complaints" to pay PissedConsumer the substantial sums of money it demands from the victims on an ongoing basis.

33.     If the victims of the complaints pay PissedConsumer in accordance with its exorbitant demands, PissedConsumer will remove, recategorize, hide and filter existing and new complaints submitted by third parties for publication on its website.  PissedConsumer offers to act as a "gatekeeper" for these companies, ensuring that new negative complaints are not posted by consumers and existing negative complaints on its website are hidden, removed, or turned into positive testimonials.

34.     Moreover, PissedConsumer makes no attempt to discern which complaints are legitimate and which are fake or false.

35.     Any anonymous computer user can post a complaint on PissedConsumer's website.

36.     Unless the victim of the false, negative complaint pays PissedConsumer the exorbitant sums it demands, PissedConsumer will not require the complaint's author reveal his or her true identity or contact information.

37.     "Complaints" on PissedConsumer's website may be, and often are, completely false and defamatory.

38.     Any anonymous computer user can post a complaint.  PissedConsumer refuses to reveal who has posted the complaints.  Accordingly, Plaintiff cannot determine whether, instead of being posted by actual consumers of the products, the complaints may instead be posted by PissedConsumer itself, or by competitors of the target company that are simply seeking to harm that target company's reputation in order to increase their own sales.

**C.     PissedConsumer's Use of Ascentive's Trademarks in PissedConsumer's Website Text, Subdomains and Metadata.**

39.     PissedConsumer creates "subdomains," or named domains that are part of its larger "PissedConsumer.com" domain name, at www.pissedconsumer.com.

40.     PissedConsumer created two "subdomains" associated with Ascentive, http://finallyfast.pissedconsumer.com and http://ascentive.pissedconsumer.com.

41.     PissedConsumer uses the trademarks "Ascentive" and "FinallyFast" in connection with these subdomains.  Ascentive's trademarks are displayed to consumers visiting PissedConsumer's website in the text displayed at http://finallyfast.pissedconsumer.com and http://ascentive.pissedconsumer.com and in the subdomain addresses themselves.  *See* Printouts from PissedConsumer.com, attached as Exhibit 2.

42.     PissedConsumer also uses Ascentive's trademarks in the metadata associated with its website.[2]

---

[2] Metadata is data associated with a website that is written in HTML code and read by search engines that index the website.  Computer users using Internet Explorer can view a website's metadata if they select "View" and "Source" in the menu bar when visiting the website.  The metadata at ascentive.pissedconsumer.com, for example,  repeatedly includes the trademark "ascentive."  *See* MetaData Printout (excerpted and highlighted), attached as Exhibit 3.

43.     Upon information and belief, defendant Alex Syrov controls the creation of subdomains and domains related to PissedConsumer's website and the manner in which Ascentive's trademark are used in connection with those subdomains and domains.

44.     PissedConsumer's website contains descriptions of Ascentive and its products posted by PissedConsumer.  For example, PissedConsumer's website states: "Ascentive LLC is an American company. The company offers such products and services as internet optimizer, internet monitoring software, fix registry errors, clean windows registry, eliminate spyware, memory optimizer, system optimizer, spam protection, business ad government, employee monitoring software, and so much more. Ascentive offers free trials for almost all the products." Ex. 2.

45.     Alongside this description of Ascentive, PissedConsumer displays numerous advertisements for third parties' products and services, including but not limited to advertisements for internet monitoring software, registry error cleaners, internet optimizers, spyware software and spam protection software.  These advertisements offer the same "free download" and "free scan" offered by Ascentive.  Ex. 2.

46.     Many of these third-party advertisements promote the products of Ascentive's direct competitors.  *Id*.

47.     The advertisements are displayed through Google's "AdWords" advertising program, in which Google allows PissedConsumer to profit from this display of third-party advertisements on its website every time a consumer clicks on one of the advertisements.

48.     PissedConsumer's webpages feature so many advertisements of Ascentive's competitors, displayed in a cluttered fashion and used in connection with Ascentive's

trademarks, that consumers seeking Ascentive's products are likely to be redirected by PissedConsumer to the websites of Ascentive's competitors.

49.     The Google AdWords advertising program compensates PissedConsumer based on the number of clicks on the advertisements on its website and therefore PissedConsumer profits from this type of consumer confusion in the form of click-through fees.

50.     Although there are also comments and reviews of Ascentive's products, purportedly posted by anonymous third parties, these comments and reviews are at the bottom of the webpages. The focus of PissedConsumer's webpages is the third-party advertisements. *Id*.

**D.     Consumers Are Further Misled By PissedConsumer's Improper "Search Engine Optimization" Tactics**

51.     When a consumer searches on Google's search engine for Ascentive's trademark - "Ascentive" – PissedConsumer's website "Ascentive.PissedConsumer.com" often appears in the first two websites listed in Google's search results for "Ascentive". *See* Google Search Results for Ascentive, attached as Exhibit 4. This is despite the fact that PissedConsumer's website offers little to no content about Ascentive and its products.

52.     This high Google ranking results from PissedConsumer's practice of "SEO" or "search engine optimization," which refers to the process through which a company improves its website's visibility or ranking in search engines' "natural" or unpaid search results.

53.     PissedConsumer employs various deceptive SEO practices to be ranked in the first two search results on Google, and equally prominently by other search engines such as Bing and Yahoo! These deceptive practices include:

A.     Buying hundreds of domain names and using them to create links to PissedConsumer's website, so that PissedConsumer's website appears prominently in search engine search results despite the fact that these inbound links have nothing to do with public interest or relevancy. *See* Articles describing

PissedConsumer's use of "black hat" SEO practices and "linkfarm schemes." Exhibit 5.

B.  Creating numerous subdomains that interlink between each other, also affecting search engines' evaluation of PissedConsumer's "relevancy."  *Id.*

C.  Making excessive use of brand name "keywords" in website text, metadata and subdomains, in a manner that causes PissedConsumer's webpages to appear more relevant to searches for those brand names even though it is unrelated.  *Id.*

D.  Reposting the same "consumer complaints" repeatedly on multiple websites so that the complaints appear current and as new content, even when the complaints are outdated and recycled.

E.  Creating Twitter accounts that simply post links to complaints at the PissedConsumer website, linking to PissedConsumer.com but offering no other content.  For example, the Twitter accounts located at www.twitter.com/pissedconsumer and www.twitter.com/consumer_press repeatedly repost links to alleged PissedConsumer customer complaints regarding Ascentive and its products, even where those alleged complaints are outdated and were posted ***more than a year ago***.  This causes consumers and search engines to perceive posted "complaints" about Ascentive as more current and numerous than they actually are.  It also increases PissedConsumer's prominence on search engines such as Google.

54.  Upon information and belief, PissedConsumer repeatedly reposts the same "complaints" about Ascentive and its products on PissedConsumer's website, through PissedConsumer's Twitter accounts, and through other websites, falsely indicating that the complaints are recent and current, to increase the negative impact of the complaints on Ascentive and to increase the Google ranking of PissedConsumer's website relative to Ascentive's websites.

55.  PissedConsumer's recorded website traffic dropped drastically in 2009, after reports surfaced on the internet that PissedConsumer was employing deceptive or "black hat" SEO practices and a Google representative responded to those reports.  *See* Ex. 1 (Information re: PissedConsumer.com showing plummeting website traffic) and Ex. 5 (online articles re: Google's response).  Upon information and belief, Google temporarily blocked

PissedConsumer.com from its search listings.  *Id*.  PissedConsumer's websites, however, have again rose to prominence in Google's rankings.  *Id*.

**D.      PissedConsumer's Extortion and Commercial Bribery**

56.      Around June 2010, false and outdated "complaints" about Ascentive on PissedConsumer's website were brought to Ascentive's attention.  Ascentive became very concerned about the impact these postings are having on Ascentive's sales and reputation.

57.      Ascentive's Director of Marketing Ian Singer noticed  the link to "Reputation Management" on the pages Ascentive.PissedConsumer.com and FinallyFast.PissedConsumer.com.  PissedConsumer's website states: "In an effort to assist companies and individuals with their online reputation, Pissed Consumer is offering premium reputation management services. Our services allow you to tell your side of the story and address the complaints received from consumers."  Ex. 2.

58.      The website invited Ascentive to contact PissedConsumer for a "custom quote" for its "reputation management services."  Ex. 2.

59.      Ian Singer contacted PissedConsumer as instructed and was put in touch with Michael Podolsky, chief executive officer of Opinion Corp., on or about June 10, 2010.

60.      Mr. Podolsky and Mr. Singer had subsequent conference calls on or about June 15, 2010, and June 17, 2010, in which Mr. Podolsky made representations regarding what services PissedConsumer would provide to Ascentive in exchange for certain sums.

61.      Mr. Podolsky represented during these calls that PissedConsumer would remove negative complaints in exchange for payment and Ascentive's participation in its "reputation management program."

62.     PissedConsumer demanded that Ascentive sign a "non-disclosure agreement"

before PissedConsumer would provide Ascentive with the details and price of its "reputation

management program."

63.     To uncover PissedConsumer's unlawful scheme, Ascentive's CEO, Adam Schran,

and Michael Podolsky signed the non-disclosure agreement.

64.     Mr. Podolsky then forwarded to Ascentive on or about June 21, 2010,

documentation including PissedConsumer's "Service Offering".

65.     PissedConsumer represented that it would provide the following services to

Ascentive in exchange for substantial sums:

> A.     PissedConsumer would change the display of existing negative complaints on its website so that the text of the complaints would be hidden from website visitors.

> B.     PissedConsumer would notify Ascentive of any future complaints consumers attempt to post on its website to give Ascentive an opportunity to resolve those complaints ***before the complaints would be published on the website,*** or disable the commenting functionality on Ascentive's webpages, which would prevent consumers from posting new complaints.

> C.     PissedConsumer would collect information about users posting complaints – including contact information – and provide that information to Ascentive.  If the user attempting to post the complaint was not willing to provide his or her contact information to Ascentive, PissedConsumer would deem that user's comment "inappropriate" and prohibit the user from posting the complaint on the website.

> D.     PissedConsumer would remove and recategorize negative complaints.

> E.     PissedConsumer would work in cooperation with Ascentive to address any additional suggestions by Ascentive on how complaints could be handled and what additional services PissedConsumer could provide (for a fee).

66.     PissedConsumer explained to Ascentive that PissedConsumer deems complaints

"inappropriate," blocks complaints, recategorizes complaints, removes complaints, hides

complaints, and prevents consumers from posting complaints on its website.

67.     PissedConsumer explicitly acknowledged that existing comments about Ascentive on its website are negative and adversely affect Ascentive's brand image and consumers' first impression.

68.     PissedConsumer claimed that Ascentive's participation in PissedConsumer's Reputation Management program would turn negative reviews on PissedConsumer's website into positive ones.

69.     PissedConsumer represented that negative reviews would be removed, hidden or minimized so that its website would highlight positive content over negative content in exchange for substantial sums.

70.     PissedConsumer made clear to Ascentive that absent these payments and Ascentive's participation in its "reputation management program," the negative content posted at PissedConsumer.com would not be removed and these changes would not be made.

71.     PissedConsumer threatened Ascentive that negative content about Ascentive and its products would continue to be prominently displayed to consumers, absent payment by Ascentive to PissedConsumer.  The display of this negative content is threatened to continue into the future absent payment.

72.     Upon information and belief, PissedConsumer has similarly threatened and continues to threaten other companies in positions similar to Ascentive, as other companies' "subdomains" at PissedConsumer.com contain similar negative content and link to the same "Reputation Management" advertisement and "price list" by PissedConsumer.

73.     PissedConsumer's extortionary threats are of indefinite duration and have become a regular way that PissedConsumer conducts business.

74.     Upon information and belief, PissedConsumer has engaged in these business practices with numerous companies similar to Ascentive since the launch of its website in 2007.

75.     Companies and consumers have posted commentary online describing PissedConsumer's conduct related to other companies as "extortion" and noting that "complaints" about companies participating in PissedConsumer's "reputation management program" have been suddenly removed from PissedConsumer's website.  Ex. 5.

76.     One commentator on PissedConsumer's website states: "It [is] pretty strange how all of a sudden most of the complaints against Davison Inventegration posted by 'Ex Employees' seemed to have been pulled from Pissed Consumer's website.  Hmmm.  From what I hear this is the same thing Davidson did with Rip Off Report.  Paid them off so they pulled the postings that did the most damages and most likely had the most credibility…I am disappointed at Pissed Consumer."  *See* Exhibit 6.

**F.     Ascentive's Unsuccessful Attempts to Resolve This Dispute with PissedConsumer**

77.     Ascentive contacted PissedConsumer through counsel on July 27, 2010, describing its potential claims and requesting that the webpages Ascentive.PissedConsumer.com and FinallyFast.PissedConsumer.com be removed.

78.     On August 17, 2010, PissedConsumer briefly responded that it believed Ascentive's claims had no merit and threatened to seek Rule 11 sanctions against Ascentive if a complaint was filed.  PissedConsumer claimed that it never removes negative consumer complaints, which directly contradicted its prior statements to Ascentive.

79.     Ascentive responded further explaining its position on August 24, 2010, requesting a response by August 31, 2010.

80.     PissedConsumer failed to respond and Ascentive has proceeded with the filing of this complaint.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(c) – CIVIL RICO**

81.     Ascentive incorporates by reference each and every allegation of the paragraphs above.

82.     Defendants Opinion Corp., Mr. Podolsky, Ms. Simpson and Mr. Syrov  are "persons" as defined under 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c).

83.     At all relevant times, Defendants were employed by and/or affiliated with the entity or association of persons and entities operating and supporting the operation of the website PissedConsumer.com (the "PissedConsumer Enterprise").

84.     The PissedConsumer Enterprise was conducted through the unlawful actions of Defendants, other PissedConsumer agents and/or employees, including PissedConsumer's legal counsel, the search engine(s) listing PissedConsumer's website, the advertisers on PissedConsumer's website, and other persons and entities.

85.     The PissedConsumer Enterprise constitutes an "enterprise" or "association in fact enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), that furthers the Defendants' common purpose of committing acts of commercial bribery and extortion.

86.     Opinion Corp. and the PissedConsumer Enterprise are used to sell goods and services in interstate commerce and are engaged in activities that affected interstate commerce.

87.     Defendants were and are employed by and/or associated with Opinion Corp. and the PissedConsumer Enterprise.  They have control over Opinion Corp. and the PissedConsumer Enterprise such that they conduct and participate in the conduct, either directly or indirectly, of the operation and management of Opinion Corp. and the PissedConsumer Enterprise.

88.     Defendants own, operate and/or control the website located at PissedConsumer.com and numerous other domains affiliated with the PissedConsumer.com domain and used to increase the search engine ranking of PissedConsumer.com.

89.     Defendants engaged in a pattern of racketeering activity consisting of at least two predicate acts of racketeering by each Defendant.  Defendants operate the PissedConsumer website through their ongoing conduct and Defendants' predicate acts of racketeering are part of Defendants' regular way of doing business.

90.     Upon information and belief, Defendants have operated the PissedConsumer.com website in connection with a scheme and conspiracy to extort and solicit money from the victims of the website (described by PissedConsumer as its "reputation management program") since 2007.  Defendants committed the described acts of racketeering continuously since 2007.

91.     Defendants took the actions that constitute a pattern of racketeering activity for the same purpose – to extract money from the victims of the scheme (the companies that are the victims of "complaints" posted at PissedConsumer.com) through commercial bribery and extortion.

92.     As the victims, participants and methods of commission that comprised Defendants' pattern of racketeering were the same or similar, these acts of racketeering constitute a continuous and related pattern or racketeering as defined in 18 U.S.C. 1961(1) and (5).

93.     Defendants advertised, solicited clients, conducted substantial amounts of business and committed acts of commercial bribery and extortion in the Commonwealth of Pennsylvania, where Ascentive is located, and in other states.

94.     Defendants' acts constituting "racketeering activity" under 18 U.S.C. 1961 (1) included acts and threats involving bribery and extortion punishable and chargeable by imprisonment for more than one year under Pennsylvania and federal law.

### A.     Predicate Acts of Commercial Bribery

95.     Pennsylvania has criminalized commercial bribery under 18 Pa. C.S. § 4108(b), which states:

> A person who holds himself out to the public as being engaged in the business of making disinterested selection, appraisal or criticism of commodities or services commits a misdemeanor of the second degree if he solicits, accepts or agrees to accept any benefit to influence his selection, appraisal or criticism.

96.     Defendants committed acts of commercial bribery in violation of 18 Pa. C.S. § 4108(b).  These acts constituted "a pattern of racketeering activity" under the RICO statute, as defined and explained above.

97.     PissedConsumer holds itself out to the public as being engaged in the business of making disinterested selection, appraisal and criticism of commodities and services, describing itself as a disinterested website dedicated to allowing consumers to vent their aggravations and consumer experiences and a  "premier consumer advocacy group."  PissedConsumer, however, fails to disclose that it solicits and accepts benefits from companies such as Ascentive to influence that selection, appraisal and criticism.

98.     Defendants knowingly assisted each other and each others' acts of commercial bribery in conducting the PissedConsumer Enterprise.

99.     Defendant Podolsky and his company Opinion Corp. committed acts of commercial bribery, including but not limited to: (1) contacting Ascentive multiple times to solicit benefits in exchange for influencing PissedConsumer's website content; (2) creating and approving press releases advertising PissedConsumer to the public as being engaged in the

business of making disinterested selection, appraisal and criticism of commodities and services; (3) creating, controlling and approving website content that gives an appearance of being distinterested but also furthers Defendants' solicitation and commercial bribery; (4) encouraging, controlling and approving negative website content to solicit Ascentive's and other companies' payments to PissedConsumer; (4) using improper SEO tactics, other websites and accounts, and Ascentive's trademarks for the same purposes; and (5) requiring that a non-disclosure agreement be signed to maintain PissedConsumer's public image of disinterestedness and signing the agreement.

100.    Defendant Simpson committed acts of commercial bribery, including but not limited to: (1) creating and drafting multiple press releases advertising PissedConsumer to the public as being engaged in the business of making disinterested selection, appraisal and criticism of commodities and services; (2) controlling Opinion Corp.'s Twitter accounts to recycle and repost negative content regarding Ascentive and other companies, to further solicit and encourage payments to PissedConsumer; and (3) creating, controlling and approving website content that gives an appearance of being distinterested but also furthers Defendants' solicitation and commercial bribery of Ascentive and other companies.

101.    Upon information and belief, defendant Syrov committed acts of commercial bribery, including but not limited to encouraging, creating, and controlling negative website content and using Ascentive's trademarks in metadata to solicit payments from Ascentive and other companies through commercial bribery.

### B.    Predicate Acts of Extortion

102.    Defendants' acts also constitute extortion in violation of the Hobbs Act, 18 U.S.C. 1951, which states:

> Whoever in anyway or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

103. "Extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id*. "Fear" includes threatened fear of economic loss.

104. Defendants conspired to extort, extorted, and attempted to extort money from Ascentive in violation of the Hobbs Act. These acts also constituted "a pattern of racketeering activity" under the RICO statute, as defined and explained above.

105. Defendant Podolsky and his company Opinion Corp. committed acts of extortion and attempted extortion, including but not limited to: (1) threatening Ascentive on multiple occasions with the fear of continuing economic loss resulting from PissedConsumer's wrongful conduct, in order to obtain money from Ascentive; (2) encouraging, controlling and approving negative website content to cause ongoing economic loss to Ascentive and therefore increase the chances of obtaining money from Ascentive; (3) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer; and (4) requiring that a non-disclosure agreement be signed to facilitate PissedConsumer's extortion of Ascentive and other companies and signing the agreement.

106. Upon information and belief, defendant Simpson committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Ascentive and other companies, in order to obtain money from Ascentive and others; and (2) continuously inviting "victims" of

19

PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

107.     Upon information and belief, defendant Syrov committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Ascentive and other companies, in order to obtain money from Ascentive and others; and (2) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

108.     Defendants knowingly assisted each other and each others' acts of extortion and attempted extortion in conducting the PissedConsumer Enterprise.

**C.     <u>Direct Injuries to Ascentive</u>**

109.     Ascentive has experienced and is experiencing ongoing economic losses in the form of lost consumer sales and tarnishment to its reputation with consumers, due to Defendants' conduct.

110.     The "complaints" posted on PissedConsumer's website falsely characterize Ascentive's software as actually harmful to consumers' computers and a "scam."

111.     Ascentive also was forced to engage in a series of negotiations with PissedConsumer over time regarding Ascentive's participation in PissedConsumer's "reputation management program" and the signing of a non-disclosure agreement.  Ascentive was required to spend employee time addressing these negotiations and to consult legal counsel in connection with these discussions, all of which also resulted in further economic loss to Ascentive.

112. Ascentive was one of the direct and intended victims of the PissedConsumer Enterprise, Defendants' pattern of racketeering, and Defendants' violations of the Hobbs Act and Pennsylvania's commercial bribery statute.

113. As a direct result of the conduct described above, Ascentive lost valuable business and property interests. Ascentive lost not only sales revenues as a result of the negative and defamatory content posted at PissedConsumer.com, but also the time and money required to respond to PissedConsumer's threats.

114. PissedConsumer threatened that the negative and defamatory content posted at PissedConsumer.com would only cease causing economic harm to Ascentive if Ascentive participate in PissedConsumer's "reputation management program" and gave in to PissedConsumer's demand that Ascentive pay PissedConsumer exorbitant sums.

115. Ascentive has been injured in its business and property by reason of the foregoing violations of 18 U.S.C. § 1962(c) in an amount to be determined at trial. By reason of the foregoing acts, Ascentive is entitled to treble damages under the RICO statute, as well as other relief which is necessary and proper, including reasonable attorneys' fees and costs.

116. Moreover, Ascentive is currently suffering irreparable injury as a result of Defendants' continued operation of the PissedConsumer.com website. Ascentive's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains FinallyFast.PissedConsumer.com and Ascentive.PissedConsumer.com, and therefore Ascentive also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Ascentive's trademarks at PissedConsumer.com) be preliminarily and permanently enjoined.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. § 1962(d) – RICO CONSPIRACY

117.     Ascentive incorporates by reference each and every allegation of the paragraphs above.

118.     Defendants have conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct an enterprise affecting interstate commerce, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

119.     Ascentive has been injured in its business and property by reason of the foregoing violations of 18 U.S.C. § 1962(d) in an amount to be determined at trial.  By reason of the foregoing acts, Ascentive is entitled to treble damages under the RICO statute, as well as other relief which is necessary and proper, including reasonable attorneys' fees and costs.

120.     Moreover, Ascentive is currently suffering irreparable injury as a result of Defendants' continued operation of the PissedConsumer.com website.  Ascentive's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains FinallyFast.PissedConsumer.com and Ascentive.PissedConsumer.com, and therefore Ascentive also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Ascentive's trademarks at PissedConsumer.com) be preliminarily enjoined.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF 15 U.S.C. § 1114 and 1125(a) - THE LANHAM ACT

121.     Ascentive incorporates by reference each and every allegation of the paragraphs above.

122.     Ascentive's trademarks are valid and distinctive federally registered trademarks entitled to protection under the Lanham Act.

123.    PissedConsumer uses Ascentive's trademarks in commerce and in connection with advertisements displayed on PissedConsumer's website.

124.    PissedConsumer profits from click-through fees generated by its display of third-party advertisements and its use of Ascentive's trademarks at Ascentive.PissedConsumer.com and FinallyFast.PissedConsumer.com.

125.    Ascentive did not consent directly or indirectly to PissedConsumer's use of Ascentive's trademarks in any manner and Ascentive expressed its strong written objection to PissedConsumer's unauthorized use of Ascentive's trademarks.

126.    PissedConsumer's unauthorized and willful use of Ascentive's trademarks in connection with the display of third-party advertisements, including advertisements for the products of Ascentive's competitors, constitutes a use in commerce that infringes Ascentive's exclusive rights in its federally registered marks and is likely to cause confusion, mistake or deception as to the source of the goods and services offered.

127.    Such actions are also likely to cause confusion as to whether Ascentive is sponsoring, has authorized or is somehow affiliated with the products advertised.

128.    Consumers are likely to be initially confused into believing that clicking on advertisements displayed on PissedConsumer's website will lead to Ascentive's websites and Ascentive's computer software.  Ascentive's products and the products offered on the third-party websites are related, as are the trade channels and purchasers for such products.

129.    Even after accessing the websites advertised at PissedConsumer.com, consumers are likely to be confused into believing that those websites and any software they contain are associated with, sponsored by, developed by, or otherwise affiliated with Ascentive.

130.    PissedConsumer's unauthorized and willful use of Ascentive's registered trademarks constitutes trademark infringement, unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1114 and 1125(a).

131.    Ascentive has been injured in its business and property by reason of the foregoing Lanham Act violations in an amount to be determined at trial.

132.    Moreover, Ascentive is currently suffering irreparable injury as a result of Defendants' continued use of Ascentive's trademarks in connection with the PissedConsumer.com website.  PissedConsumer's infringement, unfair competition, and false designation of origin has caused and, unless restrained by this Court, will continue to cause Ascentive irreparable injury.

133.    Ascentive's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains FinallyFast.PissedConsumer.com and Ascentive.PissedConsumer.com, and therefore Ascentive also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Ascentive's trademarks at PissedConsumer.com) be preliminarily and permanently enjoined.

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**

134.    Ascentive incorporates by reference each and every allegation of the paragraphs above.

135.    Ascentive owns protected and/or protectable common law trademark rights in its distinct and valuable marks.

136.     Ascentive uses its trademarks in commerce and in conjunction with its legitimate business operations.

137.     PissedConsumer's unlawful and willful conduct is likely to create confusion concerning the origin of the goods or services advertised, and constitutes trademark infringement, unfair competition and false designation of origin in violation of Ascentive's trademark rights at common law.

138.     PissedConsumer's common law trademark violations have directly and proximately caused and continue to cause injury and damage to Ascentive by, among other things, causing Ascentive to lose control of its business reputation, causing confusion, diverting customers, sales, and otherwise causing significant commercial loss.

139.     As a result of PissedConsumer's actions, Ascentive has suffered, and will continue to suffer, irreparable harm and Ascentive has no adequate remedy at law.

140.     PissedConsumer's violations of law have damaged Ascentive in an amount to be determined at trial.

141.     Ascentive requests that PissedConsumer's operation of subdomains containing and using Ascentive's trademarks at PissedConsumer.com be preliminarily and permanently enjoined.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF 73 P.S.§ 201-2 -  PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**

142.     Ascentive incorporates by reference each and every allegation of the paragraphs above.

143.     Defendants advertise, solicit clients, and conduct substantial amounts of business in the Commonwealth of Pennsylvania, where Ascentive is located.

144. As described above, Defendants' conduct violates Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), which prohibits "unfair methods of competition" and "unfair or deceptive acts and practices."

145. Defendants willfully used methods declared unlawful by the UTPCPL, including but not limited to:

A. Falsely passing off goods and services advertised on the PissedConsumer.com website as those of Ascentive's;

B. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, affiliation or certification of goods and services advertised on the PissedConsumer.com website;

C. Using deceptive representations in connection with the goods and services advertised on PissedConsumer.com website and with Ascentive's goods and services;

D. Representing that Ascentive's goods or services, and goods and services advertised at PissedConsumer.com, have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; and

E. Disparaging the goods, services and business of Ascentive by false or misleading representations of fact.

146. Ascentive was damaged as a direct result of Defendants' violations of the UTPCPL.

147. Ascentive continues to suffer irreparable harm as a result of Defendants' conduct.

148. Ascentive requests that PissedConsumer's operation of subdomains containing and using Ascentive's trademarks at PissedConsumer.com be preliminarily and permanently enjoined.

## SIXTH CLAIM FOR RELIEF
## INTERFERENCE WITH CONTRACTUAL
## AND PROSPECTIVE CONTRACTUAL RELATIONS

149. Ascentive incorporates by reference each and every allegation of the paragraphs above.

150. Ascentive derives much of its revenues from the online sales of its computer software products to potential consumers.

151. Ascentive has contractual and prospective contractual relationships with the internet users that search for Ascentive's brand names on search engines, view the prominent display of PissedConsumer's website in the search listings, and/or visit the PissedConsumer.com website.

152. PissedConsumer's conduct in tortiously interfering with Ascentive's contractual and prospective contractual relationships with these consumers has been wrongful, intentional and criminal, as described above. There is no privilege or justification for PissedConsumer's conduct.

153. As a result of PissedConsumer's trademark infringement, false advertising and unfair competition, these consumers are confused into visiting the websites of Ascentive's competitors when searching for Ascentive's products by brand name.

154. As a result of PissedConsumer's criminal conduct, including commercial bribery and extortion, the consumers are also exposed repeatedly to false, defamatory, negative and outdated "complaints" about Ascentive posted on the PissedConsumer.com website.

155. As a result of PissedConsumer's conduct, Ascentive has been, and absent injunctive relief will continue to be, irreparably harmed by PissedConsumer's actions.

156. Ascentive has no adequate remedy at law for the foregoing wrongful conduct.

157.    PissedConsumer's intentional interference with prospective contractual relations has damaged Ascentive in an amount to be determined at trial.

158.    Ascentive requests that PissedConsumer's operation of subdomains containing and using Ascentive's trademarks at PissedConsumer.com be preliminarily and permanently enjoined.

**SEVENTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

159.    Ascentive incorporates by reference each and every allegation of the paragraphs above.

160.    Ascentive has a right to recover from PissedConsumer based on PissedConsumer's unjust enrichment resulting from the actions of PissedConsumer described above.

161.    PissedConsumer has knowingly benefited from its use of Ascentive's trademarks in conjunction with its advertising programs and has retained the benefits of its use of Ascentive's trademarks, which use is in violation of Ascentive's rights and causes harm to Ascentive, as set forth above.

162.    PissedConsumer used Ascentive's trademarks to improve the prominence of its website in search engine listings (for example, its "Google ranking"), to increase consumer traffic to its website, and to profit from that consumer traffic.

163.    Under these circumstances, as set forth in the complaint, it would be unjust for PissedConsumer.com to retain the benefits conferred upon it by its use of Ascentive's trademarks without payment to Ascentive.

## EIGHTH CAUSE OF ACTION
## DECLARATORY JUDGMENT AS TO NON-DISCLOSURE AGREEMENT

164.    Ascentive incorporates by reference each and every allegation of the paragraphs above.

165.    Defendants' actions have given rise to an actual and justiciable controversy pursuant to 28 U.S.C. 2201 et seq.

166.    Ascentive requests a declaration that the non-disclosure agreement it signed its void ab initio.

167.    As described above, the agreement was for an illegal purpose, and as such, void as a matter of public policy.

168.    In the alternative, the agreement is otherwise unenforceable.

169.    The agreement lacks consideration and is unconscionable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Ascentive, LLC, asks for an order and judgment against defendants Opinion Corp. d/b/a PissedConsumer.com, Michael Podolsky, Joanna Clark Simpson and Alex Syrov:

a.    Awarding Ascentive preliminary and permanent injunctive relief enjoining Opinion Corp. and its officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert with it, from using Ascentive's trademarks or terms confusingly similar to them in commerce and in connection with the PissedConsumer.com website;

b.    Awarding Ascentive actual, compensatory and punitive damages to the full extent allowed by law;

c.      Awarding Ascentive costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117 and the RICO statute, 18 U.S.C. § 1964.

c.      Awarding Ascentive actual and trebled damages to the full extent provided by 15 U.S.C. § 1117 and 18 U.S.C. § 1964, in an amount to be determined at trial.

e.      Granting such other relief as this Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff Ascentive, LLC, requests a jury trial on all claims.


                                                Respectfully submitted,

Dated:  September 24, 2010                      _/s/ Darren H. Goldstein, Esquire_
                                                Darren H. Goldstein, Esquire
                                                N.Y. I.D. No. 1978501

                                                and

                                                (pro hac vice to be sought)
                                                Abbe F. Fletman, Esquire
                                                Jordan A. LaVine, Esquire
                                                Alexis Arena, Esquire
                                                **FLASTER/GREENBERG P.C.**
                                                1600 JFK Blvd., 2nd Floor
                                                Philadelphia, PA  19103
                                                (215) 279-9393 (phone)
                                                (267) 299-6865 (fax)
                                                *Attorneys for plaintiff Ascentive, LLC*