**GOETZ FITZPATRICK** LLP
Attorneys at Law                    www.goetzfitz.com
55 Harristown Road, Glen Rock, NJ 07452 | (T) 201-612-4444 | (F) 201-612-4455

Ronald D. Coleman
Partner
rcoleman@goetzfitz.com

December 6, 2010

**BY ECF**

Hon. I. Leo Glasser, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

> Re:   Ascentive, LLC v. Opinion Corp. et al
>        10-cv-04433-ILG –SMG

Dear Judge Glasser:

The Court will recall, having just held a hearing on this matter today, that we represent defendants Opinion Corp., Michael Podolsky and Alex Syrov ("defendants").  At the close of this afternoon's proceedings Your Honor mentioned that he hoped, at tomorrow's continuation of the preliminary injunction hearing, that the undersigned would be able to elucidate the question of the application of the fair use defense under the Lanham Act to a specific question raised by plaintiff's claims here.  This was the issue of whether and to what extent fair use applies to the use by a junior user such as Opinion Corp. of a plaintiff's trademark in a domain name.

We submit this letter by way of a bench brief so that the Court can review precedent on this question while affording plaintiff the opportunity to respond.  This submission is limited solely to the question raised by the Court although, of course, the cases cited have application to other legal issues relevant to the pending application.

As demonstrated below, the issues of fair use and likelihood of confusion are intertwined.  A recent and factually similar case in this Circuit, involving domain names, is *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) *aff'd*, 355 F. App'x. 508 (2d Cir. 2009).  In *Cintas* a uniform supplier sued a number of labor unions and their employees, bringing claims under RICO, the Lanham Act, and state law.  As here,  the trademark was used both in the title of

the web page and the domain name: Defendants were accused of trademark infringement because of their use of plaintiff's trademark, CINTAS, for a website called "Cintas Exposed" with the domain name www.cintasexposed.org. *Id*. at 575.  Much as the plaintiff claims here, Cintas claimed that this website "competed unfairly . . . disparaging Cintas and its business practices, products and services, confusing Cintas's customers, diverting customers, sales and profits away from Cintas and portraying Cintas in a bad light to the general consuming public. . . . . According to the Amended Complaint, some of Cintas's customers decline to do any further business with Cintas after viewing the materials on www.cintasexposed.org." *Id*.

The Southern District dismissed the trademark claim.  After setting out the famous "Polaroid factors" used in the Second Circuit since *Polaroid Corp. v. Polarad Elec. Corp.,* 287 F.2d 492, 495 (2d Cir.1961) and finding that at least four of them favored defendants, the court wrote:

> Defendants are not using the "CINTAS" mark as a "source identifier", but rather solely to criticize Cintas's corporate practices. *See United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.,* 128 F.3d 86, 92-93 (2d Cir.1997) (noting there is no justification for relief under Section 1114 and 1125(a), when "the defendants ... us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's product"). While the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote.

*Id*. at 579.  We submit that this analysis is on all fours with the case at bar.

Other courts are in accord.  For example, in *Lamparello v. Falwell*, 420 F.3d 309, 317-18 (4th Cir. 2005), cited in defendants' opposition brief, the Fourth Circuit held that a "gripe site" directed at the public figure Jerry Falwell and called www.fallwell.com did not constitute trademark infringement.  Wrote the court: "Applying the initial interest confusion theory to gripe sites like Lamparello's would enable the markholder to insulate himself from criticism—or at least to minimize access to it. We have already condemned such uses of the Lanham Act, stating that a markholder cannot shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct."  (Internal quotes and citation omitted.)

Ultimately, the Second Circuit taught over ten years ago, in the widely-cited decision in *Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573 (2d Cir.2000), that domain names are neither automatically entitled to nor excluded from the protections of the First Amendment or fair use, and  that the appropriate inquiry is one that fully addresses particular circumstances presented with respect to each domain name. *Id.* at 586. This analysis, wrote the Circuit Court, requires a "particularistic, context-sensitive analysis ... including analyses of the domain name itself, the way the domain name is being used, the motivations of the author of the website in question, [and] the contents of the website." *Id.*

Thus there are cases where a finding of confusion due to the use of a trademark in a domain name is entirely appropriate because that use is part of an overall presentation which causes likelihood of confusion.  For example, in *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176 (W.D.N.Y. 2000), defendants used plaintiffs' trademark, "The Buffalo News," as the domain name for a web site operated by defendants ("www.thebuffalonews.com") which was critical of plaintiff's newspaper website.  The court noted that while the site included disclaimers and other content that could enable consumers to distinguish between the original and the junior user, "The Tortora web site uses script and stylistic features that are very similar, if not identical, to those used by The Buffalo News in its 'www.buffalo.com' web site" and, based on this and other factors, found that there was a likelihood of confusion. *Id*. at 183.

We respectfully submit that under the "particularistic, context-sensitive analysis" required by *Name.Space, Inc.*, there can be no likelihood of confusion based on the use of plaintiff's trademarks in domain names here.  The overall impression given by PissedConsumer.com's web page is, unlike in cases such as *OBH, Inc.*, so distinct both in style and content that no confusion is plausible.  Moreover, the domain name http://ascentive.pissedconsumer.com/ itself negates a likelihood of confusion by virtue of its embedded statement of disapproval ("pissed consumer"), as set forth in defendants' opposition brief.

Additionally, "[i]n assessing the similarity factor, conflicting marks must be compared in their entireties; likelihood of confusion should not be predicated on the dissection of marks." *Citigroup Inc. v. City Holding Co.*, 171 F. Supp. 2d 333, 347 (S.D.N.Y. 2001), citing *Keebler Company v. Murray Bakery Products,* 866 F.2d 1386, 1390 (Fed.Cir.1989).  Here the dominant element of the domain name is not ASCENTIVE but, rather, PISSEDCONSUMER.COM – or at the very least, both signifiers are equally dominant.

Finally, then, there is the matter of the fair use defense and its relationship to likelihood of confusion.  Fair use, of course, is established when a trademark is used as "a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4).  It "permits others to use a protected mark to describe aspects of their own goods." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir.1995).  Here plaintiff's use of a trademark is, indeed, to use the language of *Bihari v. Gross*, 119 F. Supp. 2d 309, 321 (S.D.N.Y. 2000), "not a bad-faith attempt to trick users into visiting his websites, but rather a means of cataloging those sites," and hence fair use.  Moreover, a finding of fair use raises the bar for a finding of actionable likelihood of confusion.  "Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use, and so it is." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111,121-22 (2004).

Based on all the foregoing, defendants submit, in conclusion, that there is no likelihood of confusion caused by the use of plaintiffs' mark here based both on likelihood of confusion

GOETZ FITZPATRICK LLP

Hon. I. Leo Glasser, U.S.D.J.
December 6, 2010
Page 4 of 4

analysis as applied to domain names; and that because their uses of the trademarks are fair uses – meant basically to catalog which product or service on the PissedConsumer.com website is the subject matter of a given page – any low-level likelihood of confusion that may be found is legally subordinate to that defense, which is based on free speech concerns set out at length in defendants' moving papers.

        Respectfully submitted,

        Ronald D. Coleman

cc:    All ECF Counsel